## Union Street Ry. *v.* Hazleton & North Side Electric Ry., Appellant.

*Electric railways—Roads—Supervisors—Preliminary injunction.*

A preliminary injunction restraining an electric railway company from occupying a public road will be dissolved where it appears that plaintiff, an electric railway company, was granted the right to use the public road by a formal resolution regularly adopted at a meeting of the supervisors and spread upon the minutes, but defendant, another electric railway, had been previously authorized, by the separate act of the township supervisors, to occupy the same road, and, in pursuance of said authority, had commenced work and expended a large sum of money.

Argued April 14, 1893. Appeal, No. 441, Jan. T., 1893, by defendant, from decree of C. P. Luzerne Co., March T., 1893, No. 2, equity docket, continuing preliminary injunction. Before STERRETT, C. J., GREEN, WILLIAMS, McCOLLUM and THOMPSON, JJ.

Bill in equity for an injunction to restrain defendant from occupying Centre street in Foster township.

The bill set forth the incorporation of plaintiff under the act of May 14, 1889, described the route authorized in their article of association, alleged an application for and grant of a right of way over the roads in Foster township, Feb. 13, 1893, set forth a copy of the minutes of the supervisors of said township, authorizing such grant, averred an intrusion upon one of the roads, called Centre street, in Foster township, by defendant company, denied any right of way, in the latter, or that defendant had obtained the consent of the supervisors of the township as provided by § 15 of the act of May 14, 1889. The bill was accompanied by a bond and two injunction affidavits No formal answer was filed, but the affidavit of defendant de-

nied in detail every allegation of the bill, averred a prior incorporation to that of plaintiff, alleged a superior right to occupy the street called Centre street, both by reason of such prior incorporation and by the formal written consent of the supervisors dated Jan. 5, 1893, a month before that alleged by plaintiff, alleged an actual occupation of said road and commencement of work thereon in reliance upon the written consent of the supervisors, the expenditure of $50,000 in cash and a liability of $50,000 more upon contracts, made in good faith upon such written consent, which it is asserted was obtained from the supervisors without misrepresentation or fraud on the part of defendant company, and was given by the supervisors after due and proper deliberation and consideration, with full knowledge on their part of the import and effect of the written paper.

The court granted a preliminary injunction and, on motion to continue, filed the following opinion, by WOODWARD, J.:

" The bill and affidavits in this case present for our consideration at the present time a single question—which of the two companies claiming the right of way over the road in Foster township has complied with the requirements of section 15 of the act of May 14, 1889, P. L. 211? This section provides that ' No street passenger railway shall be constructed by any company incorporated under this act, within the limits of any city, borough or township, without the consent of the local authorities thereof,' etc.

" The plaintiffs allege that, on February 13, 1893, they applied to the supervisors of the township for the right of way in question, and they attach to their bill a copy of the minutes of the meeting of the supervisors, which reads as follows :

" ' FREELAND, Pa. February 13th, 1893.

" ' A meeting of Foster township supervisors was held this evening at the house of Patrick McFadden, one of the supervisors ; John Schnee and Patrick McFadden, the supervisors of Foster township, being present. An application for the right of way over the roads of Foster township was presented by Harry E. Sweeney, president of the Union Street Railway Company, and also read to the supervisors. After discussing the matter, Patrick McFadden, one of the supervisors, moved that the right of way be granted to the Union Street Railway Company. The motion was duly seconded by John Schnee,

the other Foster township supervisor, and carried, after which both supervisors signed the following right of way : ·

" ' To the Union Street Railway Company: Harry E. Sweeney, President:

" ' We, the undersigned, supervisors of Foster township, do hereby grant the prayer of the foregoing petitioner, upon condition that the said railway company shall, and will, at all times, save the township harmless from any suit and damage that may arise through the operation of said railway, and keep the surface of said roadbed in good repair.

" ' In witness whereof, we have set our hands and seals this 13th day of February, 1893. And said railway shall build and operate same by November or December 1, 1893. The right of way being as follows : (Then follows a description of the right of way.)

" ' There being no further business, the meeting adjourned.

" ' (Signed)  FRANK R. WELLIVER,

" ' Township Clerk of Foster Township.'

" The defendants produce an affidavit of Matthew Long, which states that, as the agent of the Hazleton and North Side Electric Railway, he called upon the supervisors, and procured from them the agreement for the right of way dated January 5, 1893, which reads as follows :

" ' Whereas, the Hazleton and North Side Electric Railway has obtained a charter, or letters patent under the provisions of the act of general assembly of the commonwealth of Pennsylvania, entitled " an act to provide for the incorporation and government of street railway companies in this commonwealth," approved March 14, 1889, to lay down, construct and establish a street railway and turnouts as may be necessary, through the township of Foster.

" ' And whereas it is provided, inter alia, in the 15th section of said act, as follows : " No street passenger railway shall be constructed by any company incorporated under this act, within the limits of any city, borough or township, without the consent of the local authorities thereof."

" ' And whereas, the consent of the authorities of the said township of Foster has been requested by the said Hazleton and North Side Electric Railway to lay down, construct and establish a street railway track or tracks, with such sidings as

may be necessary, on, over and along the public roads in said township of Foster, as hereinafter set forth.

" ' Now this agreement witnesseth, that we, Patrick McFadden and John Schnee, supervisors of said township of Foster, do hereby consent to the said request of the said Hazleton and North Side Electric Railway to lay down, construct and establish a street railway track or tracks, with such sidings and turnouts as may be necessary, on, over and along all the public roads of said Foster township, as follows, to wit: Beginning at a point on public road leading from Drifton to Freeland, on the line between Hazle and Foster townships, and extending along said road to the south end of Centre street, in the borough of Freeland, and also from the borough of Freeland, along a public road leading through South Heberton to Upper Lehigh, to township line of Butler.

" ' In witness whereof, we have hereunto set our hands this 5th day of January, 1893.

" ' Witness:                              his

" ' H. M. BRESLIN,        " ' PATRICK  ✕  McFADDEN,

" ' JAMES McHUGH,                     mark

" ' JOHN SCHNEE.'

" Mr. Long, being present at the hearing, was called as a witness for the plaintiffs. He stated that the agreement was signed by the supervisors at different times, and that he did not meet them together, but separately. It is not claimed that the supervisors acted in pursuance of any resolution, adopted at a meeting of the board, but it is alleged that no deception or fraud was practiced in obtaining their signatures to the agreement, and that both supervisors fully understood its import and effect. And these allegations are sustained by the affidavits presented by the defendants, although denied by counter affidavits of the plaintiffs. The defendants claim that, by virtue of the agreement of January 5, 1893, they are legally in possession of the right of way claimed by the plaintiff under the resolution of the supervisors, adopted more than a month later, on February 13, 1893.

" Assuming that the agreement obtained by the defendants from the supervisors, on January 5, 1893, is not invalid because of any fraud or misrepresentation, and, also, that the meeting of the supervisors on February 13, 1893, was properly held, and

that the proceedings granting the right of way to the plaintiffs were had as certified to by township clerk, it then remains to inquire as to the legal force and effect of a contract entered into by township supervisors, separately, and without a meeting at which all were present for conference and consultation.

" The doctrine of the common law is, that when a power, authority or duty is confided by law to a number of persons, or whenever a number of persons as officers are authorized or required by law to perform any act, such act may be done, and such power, authority or duty may be exercised and performed by a majority of such persons or officers, upon a meeting of all the persons or officers so entrusted or empowered, unless special provision is otherwise made: Keeler v. Frost & Worden, 22 Barb. 400. In this case an assessment of a school tax was made by two trustees, in the absence of a third. The two made out and signed the warrant for the collection of the tax, which was then carried by one of them to the third trustee, who also signed it. It was held that the assessment was void, and that the trustees were trespassers in issuing the warrant, and seizing and selling property.

" And the rule of the law on this subject is stated by Judge DILLON (Dillon on M. C., vol. 1, p. 360), as follows: ' An act of a public nature, which is to be performed by a committee, may, where purely ministerial, be performed by members of the committee acting separately, and by a majority of the members. But, as a general rule, where the act requires the exercise of judgment, the members of the committee must convene, or be notified to convene, and confer on the subject, and a majority thus convened will constitute a quorum,' etc. See Martin v. Lemon, 26 Conn. 192. And in Gallup v. Tracy, 25 Conn. 16, while, for special reasons existing in the case, the rule thus stated was held not to apply, ELLSWORTH, J., said: ' We make no question that the general principle of the law is, that public agents may act by majorities where all are present, or where all have notice to be present; and generally not otherwise.'

" In the case of the turnpike road, decided by our own Supreme Court in 1813, and reported in 5 Binney, 484, TILGHMAN, C. J., said: ' When several persons are authorized to do an act of a public nature, which requires deliberation, they all should

be convened, because the advice and opinions of all may be useful, though all do not unite in opinion.' In this case a clear distinction is recognized between matters purely ministerial and those of a deliberative nature. See also Cooper v. Lampeter Township, 8 Watts, 128.

" In Union Township v. Gibboney, 94 Pa. 537, TRUNKEY, J., said: ' One supervisor cannot bind the township for performance of a contract, the propriety of entering into which is the subject of deliberation and the exercise of judgment; but he may in matters purely ministerial. When the business requires deliberation, consultation and judgment all should be convened, because the advice and opinion of all may be useful. Before constructing a new bridge, they must meet and act as a board, for this can only be done on deliberation and consultation, and with the assent of both, or a majority. But the ordinary repairs of roads and bridges, and opening roads authorized by the court, are classed with ministerial duties, and may be performed by one.' See also Hopewell Township v. Putt, 2 W. N. 46.

" In view of the rule thus established it would seem to follow that the contract entered into between the supervisors of Foster township and the Hazleton and North Side Electric Railway Company, on January 5, 1893, was invalid and without force. It was not the joint act of the supervisors, authorized at a formal meeting of the board properly convened, after deliberate consideration, but the separate act of the two supervisors in their personal and individual capacities, and at different times. The only valid and lawful grant of the right of way over the road in question was that conferred upon the Union Street Railway Company by the resolution adopted at the meeting of the supervisors on January 13, 1893, and for this reason the motion to continue the injunction must be granted."

*Error assigned* was in continuing the injunction.

*Geo. H. Troutman, G. R. Bedford* with him, for appellant.— Deliberation and concurrence of both supervisors was all that was necessary. The authorities cited in the opinion of the court below go no further, as an examination of them will show. Martin v. Lemon, 26 Conn. 192, was a case where one member of a committee of three selectmen to abate nuisances

acted independently and without the concurrence of either of the other two. Gallup v. Tracy, 25 Conn. 10, was the case of license to stake off an oyster bed, granted by two members of a committee of four, one of such committee being the licensee himself, and the fourth member not even being consulted. Yet the grant was sustained, on the ground, among others, that vested rights would be prejudiced. In Keeler v. Frost, 22 Barb. 400, a tax was assessed by two out of three trustees, the third member afterward signing the warrant. A plaintiff, whose property was seized and sold for the tax assessed, was allowed to recover, but on the strength of a statute requiring the joint consultation of all the trustees. Cooper v. Lampeter Township, 8 Watts, 128, decided that one supervisor could not bind the township in a contract to build the wing walls of a bridge.

On the other hand, in support of our contention on this point, is Jefferson Co. v. Slagle, 66 Pa. 202, where it was held that two out of three commissioners not at the commissioner's office could make a valid contract binding on the county. And we refer to Hopewell Township v. Putt, 2 W. N. 46, 1 Dillon, Mun. Corp., 4th ed., 360 and notes. Committee of public corporations have sometimes been held to be governed by different rules from a board necessarily to be assembled or convened: Gallup v. Tracy, 25 Conn. 10; Shea v. Milford, 145 Mass. 528; Haven v. Lowell, 5 Metc. 35.

The papers of Jan. 5, 1893, having been signed by all the township authorities, was their official action as far as the plaintiff was concerned, and remained such until revoked by the authority which had made the grant.

This was no case for a preliminary injunction: Gross v. Wieand, 151 Pa. 639; Audenried v. R. R., 68 Pa. 370; Lockhart v. Railway, 139 Pa. 419.

Defendants were in possession and their rights were vested: Farmers R. R. v. Reno R. R., 53 Pa. 224; Leininger's Ap., 15 W. N. 81.

An attempt to balance the equities in the case at bar, so far from showing any clear equity on part of plaintiff, would result in inclining the scale towards defendant.

*J. B. Woodward* of *Wheaton, Darling & Woodward,* for appellee.—One supervisor cannot bind the township for the per-

formance of a contract, the propriety of entering into which is the subject of deliberation and the exercise of judgment, but he may in matters purely ministerial. When the business requires deliberation, consultation and judgment all should be convened, because the advice and opinion of all may be useful.

The consent given to appellant by the supervisors was a contract between the township and appellant. The paper by which the consent was given is in the form of a contract; after the recitals it commences with the words, " This agreement witnesseth," etc.

It is a contract, the propriety of entering into which is eminently a subject for deliberation, and the exercise of judgment on the part of the supervisor.

When a private injury results from a breach of public law, the public wrong may be redressed by a private remedy, because the private remedy prevents a wrongdoer: Sparhawk v. Union Pass. Ry. Co., 54 Pa. 401.

The rule that a chancellor will refuse to enjoin an act, when a greater injury will result from granting than from refusing an injunction, has no application where the act complained of is in itself as well as in its incidents tortious: Walters v. McElroy, 151 Pa. 549.

Opinion by Mr. Chief Justice Sterrett, May 1, 1893:

In disposing of interlocutory decrees such as this, we deem it better, as a general rule, not to express any opinion as to the merits of the controversy, for the reason that the facts, as they may be developed hereafter, are not fully before us; and any premature expression of opinion, on questions that appear to be involved, might prove to be misleading in further proceedings, if any should be had, before a master or on final hearing in the court below. This case cannot be regarded as an exception to the rule.

The only question now presented for our consideration is, whether the preliminary injunction complained of should have been continued. Upon due consideration of the injunction affidavits and proofs on which the learned court appears to have acted in making the decree, we think there was error in doing so.

Decree reversed and preliminary injunction dissolved, at appellee's cost.